HERMAN MARKSON, *as Assignee of the Leavenworth Savings Bank in Bankruptcy,* v. W. J. BUCHAN, *as Trustee in Trust for A. T. Hines, et al.*

1. INSURANCE COMPANY; *Mortgage to Secure Stock; Transfer; Prior Lien.* Where a stockholder in an insurance company of this state, to secure the payment of his stock, gives his note secured by a mortgage upon his real estate, and afterward in good faith sells and transfers his stock to other parties, who become stockholders in the corporation, and subsequently the note and mortgage which were deposited by the corporation with the treasurer of the state under and in pursuance of §§ 16 and 49 of the act to establish an insurance department in the state of Kansas, approved March 1, 1871, are surrendered to the corporation, and the corporation proceeds to wind up its business affairs and decides to surrender its securities given in payment of stock, to its present stockholders, but before so doing makes an assessment upon the shares of stock owned by the several stockholders to raise money to pay the outstanding debts of the corporation, and the stockholders who have purchased the stock for which the said note and mortgage were given pay the assessments upon their shares of stock and receive from the corporation, in good faith, the transfer of said note and mortgage, *held,* that the surrender of the

note and mortgage by the officials of the state to the corporation does not release or discharge the mortgage. *Held, further*, That the sale and transfer of the note and mortgage by the corporation to the stockholders, who purchased the stock for which said note and mortgage were given, does not satisfy the note and mortgage. And also, *held*, that the owner and holder of said mortgage, under the said transfer from the corporation, has a prior lien upon the lands embraced therein to any judgment obtained against the maker of said note and mortgage subsequent to their execution.

2. ———— *Liquidation; Reinsurance; Assessments.* Where a life insurance company of this state, about to wind up its business, insures its outstanding policies in another life insurance company of another state, and enters into a contract with said insurance company whereby, among other things, it is agreed "that the notes and mortgages given by the stockholders to secure their stock issued by the first-named company should be returned to the parties who gave the same, or their assigns, upon the execution of that contract or as soon thereafter as practicable," *held*, that the life insurance company so reinsuring its policies has the right to retain the notes and mortgages given by its stockholders to secure their stock until all the outstanding debts of the society are paid, and all equities are adjusted between the company and its stockholders. *Held, further*, That to raise money to pay its outstanding debts it has the right to make assessments upon the shares of stock owned by its several stockholders, and to dispose of to its stockholders paying assessments upon their stock the notes and mortgages given to secure the identical stock upon which such assessments are made and paid.

*Error from Leavenworth District Court.*

ACTION brought by *W. J. Buchan*, as trustee for A. T. Hines and others, against George R. Hines and others, upon a certain promissory note, and to foreclose certain mortgages given to secure its payment. Judgment for plaintiff *Buchan*, July 4, 1884. The defendant *Markson*, as assignee of the Leavenworth Savings Bank, brings the case to this court. The opinion contains a sufficient statement of the facts.

*L. B. & S. E. Wheat*, for plaintiff in error.

*Lucien Baker*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The controversy in this case is between Herman Markson, as assignee of the Leavenworth Savings

Bank, and W. J. Buchan, as trustee for A. T. Hines and others, as to which of them is entitled to the proceeds arising from the sale of certain lands embraced in two mortgages executed July 1, 1873, and April 26, 1875, by George R. Hines and wife. On October 20, 1877, Markson, as assignee, recovered in the United States district court for Kansas, a judgment against George R. Hines for $12,444 and costs, and claims that this judgment is a first lien upon all the lands embraced in the said mortgages not released. The district court rendered judgment on July 4, 1884, in favor of Buchan, as trustee, against George R. Hines, upon his note executed July 1, 1873, of $13,250 for the principal and all interest due upon said note, and decreed that the lands embraced in said mortgages, given to secure this note and not released, should be sold, and the proceeds, after payment of certain taxes, improvements and costs, should be applied: First, to the amount found due Buchan, as trustee, upon the note of George R. Hines of July 1, 1873; and second, to the payment of the judgment recovered by Markson, as assignee, against George R. Hines, on October 20, 1877. The promissory note of George R. Hines of July 1, 1873, and the mortgages of July 1, 1873, and April 26, 1875, were given to the Alliance Mutual Life Assurance Society to secure the payment of one hundred and thirty-two and one-half shares of capital stock of that corporation, owned by George R. Hines at the time of the execution of the note and mortgages. Soon after the execution of the note, it and the first mortgage were deposited by the Life Assurance Society with the treasurer of the state of Kansas, in pursuance of §§ 16 and 49 of the act to establish an insurance department in the state of Kansas, approved March 1, 1871. The note came due on the 1st–3d of July, 1878. On September 29, 1876, a written contract was executed between the Life Assurance Society and the Pacific Life Insurance Company of California, whereby the latter company insured the outstanding policies held by the Life Assurance Society. In the contract between these insurance companies, it was provided, among other things, that —

"For and in consideration of the promises, covenants and agreements of the Life Assurance Society hereafter contained, the Pacific Life Insurance Company, its successors or assigns, does hereby promise, covenant and agree to and hereby does reinsure to said party of the second part and to each and all of the said second party's policyholders or their assigns, any and all risk and risks upon the lives of individuals now outstanding and in force; and hereby guarantees unto said party of the second part and each and all said policyholders that the said risks due, or as the same may become due, shall and will be by said party of the first part promptly and duly paid, according to said several policies or contracts, and to assume and does hereby assume and promise to pay and discharge all debts and liabilities of every nature and kind whatever of said party of the second part, as per schedule hereto attached; and by virtue and force of the said assumption and promise it is intended, and said party of the first part hereby agrees, that each policyholder of the party of the second part who may choose so to do may have and maintain and enforce his or their legal claim or claims directly against said party of the first part, its successors or assigns, and take notice of loss or demand as against said second party, and in the same manner and with like effect as they might have enforced and maintained his, her or their claim or claims against said party of the second part.

"And the said party of the first part does hereby, in consideration as aforesaid, further promise, covenant and agree to save, keep harmless, and indemnify said party of the second part, its successors or assigns, from and against any and all debts and liabilities, costs, payments, expenses or demands of every kind and description in law and equity or otherwise, at the date of this instrument outstanding and in force against said party of the second part, or that may hereafter accrue or exist against said party of the second part, on account, by reason, or in any way growing out of any liability or demand of any kind now existing against said party of the second part, on account of its policy liabilities; but said party of the first part hereby reserves all legal defense to said demand or liabilities, or either of them."

It was agreed further in the contract that—

"All the mortgages and notes given by the stockholders of the Life Assurance Society to secure the payment of their stock should be returned to the parties who gave the same, or their assigns, upon the execution of the contract, or as soon thereafter as practicable."

After the execution of this contract between the insurance companies, the Life Assurance Society commenced to close up its business, and on March 9, 1880, a resolution was adopted by the stockholders of the company that "the affairs of the corporation be immediately closed up and the securities be surrendered to the respective shareholders." The board of directors of the corporation were also directed by the stockholders at said time to dispose of the securities as follows: That "when received [from the superintendent of insurance of the state] they be delivered to the present owners of the stock for the payment of which said securities were respectively given." The resolutions of the stockholders were adopted by the board of directors on March 10, 1880. On March 27, 1880, the board of directors, among other things, adopted the following:

"*Resolved*, That the owners of stock in that company be requested to pay the amount of three per cent. on their capital stock, and that the money so paid shall be used as a fund to take up all outstanding debts of this company; the money so paid to be paid into the hands of G. H. Hyde, and to be expended under the direction of the executive committee for the purpose aforesaid, and the claims so taken up to be assigned to said G. H. Hyde, to be held by him against said company to the full amount thereof, till settled as herein provided.

"As soon as all debts against the company shall be taken up, and the securities held by the officers of the state can be surrendered and assigned to any holder of such stock, who shall contribute as much or more than his proportion of the amount necessary to take up said debts, the securities of all who fail to so contribute shall be foreclosed, and the money arising from such foreclosure shall be applied to the expense of the same and to the payment of the share which the holder of the stock is liable on the debt so taken up."

On April 12, 1880, the board of directors took the following action:

"*Resolved*, That proceedings be commenced to foreclose all mortgages given for stock on which assessment shall not be paid as heretofore called, within thirty days from this date, and that the executive committee secure counsel and make all necessary arrangements for the foreclosure of said mortgages;

and that George H. Hyde is authorized to order the board of directors of said society to transfer to the holders of the stock the securities given for payment of the stock upon payment of the assessment made therefor aforesaid."

At the July term of this court for 1881, in the case of *The Life Assurance Society v. Orrin T. Welch, as Superintendent of Insurance, &c.*, 26 Kas. 632, judgment was rendered in favor of the society, compelling the superintendent to deliver up to the Assurance Society all securities belonging to the company and deposited with the treasurer of state, except an amount of such securities equal to what was known as the reserve liability on the outstanding policies of the company. The note of July 1, 1873, of $13,250, and the first mortgage to secure the same, remained with the treasurer of state under the deposit of the Life Assurance Society to about December 8, 1881, when, in pursuance of the judgment of this court, the note and mortgage were returned to the Assurance Society. Afterward the directors of the society made assessments amounting to $500 on the one hundred thirty-two and one-half shares of capital stock, which was, in March, 1882, paid by William Buchan, A. T. Hines, G. Y. Bryant, and E. S. Bartlett, as the owners of said shares. The transfer and sale to W. J. Buchan, as trustee, etc., of the note of July 1, 1873, and the mortgages given to secure the same, was the payment of $500 in pursuance of said resolutions heretofore cited and the assessments thereunder, and the transfer to him, and the parties he represented, of their portion of the assets of the Assurance Society on account of their being stockholders of stock for which the note and mortgages had been given.

The theory upon which Markson bases his claim that he is entitled to the proceeds of the sale of the lands embraced in the mortgages and ordered to be sold, prior to Buchan, as trustee, is, that he acquired a lien against the lands at the date of his judgment as assignee, on October 20, 1877, and that as the note and mortgages were returned to the Life Assurance Society in pursuance of the contract between the Pacific Mutual Life Insurance Company of California and said society,

and under the judgment of this court, rendered in the action of the Life Assurance Society against Orrin T. Welch, as superintendent of insurance, said note was thereby discharged, and the mortgages released and wiped out, subject only to the rights of the policyholders of the society and the insurance department in relation thereto. It is also contended by Markson that the Life Assurance Society received the note and mortgages from the state treasurer in December, 1881, as fully satisfied, to be surrendered to George R. Hines as discharged.

It is further contended that the Life Assurance Society, having provided substantially for the discharge of the notes and mortgages by the contract of September 29, 1876, it was not competent or in the power of the society to afterward dispose of the note and mortgages to Buchan or any other parties. The notes and mortgages are also claimed to have been released and discharged for various other reasons.

It is sufficient, however, to say that in our opinion all of these claims are untenable. The evidence produced before the trial court is not before us. The findings of that court, therefore, must be taken as conclusive. One of the findings is—

"That the said W. J. Buchan, and the other parties for whom he is trustee in this suit, are and were *bona fide* holders of said stock, and had been for a long time before the institution of this suit, and before the rendition of the judgment in the circuit court of the United States for the district of Kansas, at its June term, in 1881, in the action pending in that court by James N. Burnes, as administrator, etc., and Herman Markson, as assignee, etc., against George R. Hines, A. T. Hines, G. W. Bryant, and others."

In the latter action, the complainants were defeated as to said stock, and under the decree and judgment of that court, Buchan and the parties for whom he is trustee were decided to have been, prior to 1878, the *bona fide* owners of the stock issued in the first instance to George R. Hines. Here was an adjudication against Markson that Hines had not fraudulently disposed of his stock, and that Markson has no lien or claim thereon. This matter cannot be relitigated in this suit. When

the note and mortgages were returned from the state treasurer to the Life Assurance Society, in December, 1881, George R. Hines had sold and transferred all of his stock to Buchan, A. T. Hines, and others. The resolutions of the stockholders of the Life Assurance Society of March 9, 1880, which were subsequently adopted by the board of directors, looked to the closing up of the affairs of the society; but before the note and mortgages were returned to the parties who gave the same, or their assigns, or any demand was made therefor, the subsequent resolution of March 27, 1880, was adopted, requiring the owners of the capital stock in the society to pay an assessment of three per cent. on their stock to take up outstanding debts of the company. Buchan, Hines and other parties, as the owners of the stock issued to George R. Hines, paid this assessment, and subsequently received the transfer of the notes and mortgages.

Neither the Life Assurance Society, nor the Pacific Mutual Life Insurance Company, nor any of the stockholders of either company, nor any of the creditors of said corporations, are here objecting to the resolutions or proceedings of the Life Assurance Society in making assessments upon its stockholders, or in disposing of its securities. No fraud is established, or can be assumed from any of the findings, and Markson, who has, as assignee, simply a judgment against George R. Hines, cannot, against the findings of the trial court, question the *bona fides* of Buchan as trustee in obtaining the note and mortgages in suit. Markson has no judgment against Buchan, or any of the parties he represents; no judgment against the Life Assurance Society; and is in no way the representative of the Pacific Mutual Life Insurance Company. As George R. Hines sold and disposed of his stock in the Life Assurance Society before 1878, it was not the proper thing for the society, in the matter of closing up its affairs, to return to him the note and mortgages, because Buchan and the parties he represents paid the assessment on the stock originally issued to him; and further, because by the resolutions of the stockholders and directors of the society, the securities, when received from the state

treasurer, were to be delivered to the present owners of the stock. While the contract between the insurance companies of September 29, 1876, provided "that the notes and mortgages given by the stockholders to secure their stock issued by the Life Assurance Society should be returned to the parties who gave the same, or their assigns, upon the execution of that contract, or as soon thereafter as practicable," yet the Life Assurance Society had the right to retain such notes and mortgages until all outstanding debts of the society had been paid and all equities adjusted. It is true that the Pacific Mutual Life Insurance Company obligated itself to pay certain claims and debts of the Life Assurance Society, and under such contract it was adjudged liable to pay the costs and expenses of the prosecution of the action of the Life Assurance Society against Orrin T. Welch, tried in this court; but there is no finding of the court that the Pacific Mutual Life Insurance Company, at the date of the assessments under the resolutions of March 27, 1880, had paid the debts for which said assessments were made, nor can we judge from the contract or the findings that there was any liability upon the part of said Pacific Mutual Life Insurance Company to pay the particular outstanding debts of the Life Assurance Society, for which said assessments were made and collected. Therefore we cannot assume from the contract, or the findings of the trial court, that the assessments made upon the stock owned by Buchan and others were unnecessary and invalid.

Something is said to the effect that the judgment of the United States circuit court of June, 1881, would have been different if the note and mortgages had been surrendered to the Life Assurance Society when the action was commenced. There is a statement in the opinion filed in that case, that if the securities had been surrendered at the commencement of the action, the matter would have been considered in the determination of the cause. This is about all. It however appears from the opinion that in the investigation of the transactions of George R. Hines in that case, that no fraud was established upon his part, and the court makes the positive

finding therein that certain shares of stock held by A. T. Hines in the Life Assurance Society were transferred to him in good faith.

The judgment of the district court will be affirmed.

All the Justices concurring.